UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINTECH GLOBAL, INC.,

    Plaintiff,

v.

    Case No. 2:19-cv-11600
    Honorable Linda V. Parker
    Mag. Judge David R. Grand

CAN SOFTTECH, INC., and
SWAPNA REDDYGARI,

    Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 10)

Plaintiff LinTech Global, Inc. ("Plaintiff") initiated this lawsuit against Defendants CAN Softtech, Inc. ("CAN") and Swapna Reddygari ("Reddygari") by filing a Verified Complaint for Injunctive and Other Relief (the "Complaint") in Michigan State Circuit Court in Oakland County, Michigan. (ECF No. 1, PageID 7.) Upon recognition of the parties' complete diversity, Defendants removed the matter to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1441 and 1446. (*Id.* at 1.) Plaintiff's Complaint alleges four counts: breach of duty of loyalty and unjust enrichment by Defendant Reddygari, breach of contract by Defendant CAN, and trade secret misappropriation by both Defendants. (*Id.* at 14–17.) Presently this matter is

before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"). (ECF No. 10.) The Motion has been fully briefed, and the Court is dispensing with oral argument pursuant to Local Rule 7.1(f)(2). (ECF Nos. 10, 15, 16.)

I. **Factual and Procedural History**

Plaintiff LinTech is an information technology contractor, providing support services to federal government agencies on different projects. (ECF No. 1, PageID 8.) In its Complaint, Plaintiff alleges as follows. Since September 26, 2014, Plaintiff—holding a prime contract—provided software development, project management, operation, and maintenance support services for the Federal Aviation Administration ("FAA") Designee Management System ("DMS") (also referenced as the "FAA project"). (*Id.* at 9.)

On or about April 17, 2017, Plaintiff hired Defendant Reddygari as a full-time employee responsible for managing the daily, on-site operations of the FAA project. (*Id.*) Subsequently, Plaintiff promoted Defendant Reddygari; sometime in 2018, she began serving as Plaintiff's only Project Manager and Site Manager for the FAA Project. (*Id.*) In this role, she directly reported to Michael Lin, Plaintiff's President and Owner, and Ursa Hopkins, Plaintiff's Chief Operating Officer. (*Id.*) Also, she frequently interacted with Plaintiff's FAA customer and was relied upon to communicate customer concerns and to oversee that Plaintiff's duties related to

2

the FAA project were met. (*Id.*) Additionally, Defendant Reddygari's responsibilities included: making recommendations on whether additional positions were necessary for the FAA project, making recommendations on selecting subcontractors for the FAA project, and making hiring and firing decisions related to the FAA project. (*Id.*)

During Defendant Reddygari's tenure at LinTech, she recommended and "convinced" Mr. Lin—LinTech's President and Owner—that the subcontractor, Defendant CAN, should be hired to assist Plaintiff with the FAA project. (*Id.* at 10.) CAN, like LinTech[1], is a company providing information technology support services. (*Id.*) Although Defendant Reddygari disclosed to Plaintiff that Amar Chandagari, President of CAN Softtech, Inc., was her husband, she also represented that there would be no conflict of interest in hiring her husband's company to work on the FAA project because "her allegiance was with LinTech[,] and CAN would be treated like any other subcontractor." (*Id.*) As a result, Plaintiff hired Defendant CAN as a subcontractor. (*Id.*) The parties entered into an "Indefinite Delivery Indefinite Quantity" Agreement (the "Subcontractor Agreement" or the "Agreement") on or around May 2, 2018. (*Id.*) At the time of the Agreement, neither Defendant disclosed that Defendant Reddygari had any ownership interest or any managerial role at CAN Softtech, Inc. (*Id.* at 10, 12.)

---

[1] But for the Agreement, Plaintiff LinTech views Defendant CAN as a direct competitor. (*Id.* at 10.)

3

While working full-time for Plaintiff on the FAA project, however, Defendant Reddygari had an ownership interest in and served as the Chief Executive Officer of CAN Softtech, Inc. (*Id.* at 10, 12.)

After Plaintiff contracted with Defendant CAN for services related to the FAA project, CAN and its employees were increasingly used. (*Id.* at 11.) By November 2018, LinTech employees working on the FAA project were reduced from 100% of the positions to 4 of 19 (21%) of the positions—the 15 other positions being filled by CAN employees. (*Id.*) Although Mr. Lin addressed balancing the number of Plaintiff's and Defendant's employees on the project, Defendant Reddygari continued to use mostly CAN employees. (*Id.*)

Because the FAA project did not have a set expiration[2], Defendant Reddygari had the responsibility of updating Mr. Lin on when and whether the project was up for re-bid or might end. (*Id.*) Defendant Reddygari informed Mr. Lin that the FAA project would extend beyond April 2020, but never informed him that it would be re-bid or that Plaintiff's contract was in jeopardy of being terminated. (*Id.*)

Without any prior notice, on May 14, 2019, Defendant Reddygari resigned from her employment with Plaintiff, and Defendant CAN terminated its subcontract with Plaintiff. (*Id.* at 12.) The same day, the FAA ended its

---

[2] The FAA project was typically extended on a yearly basis. (ECF No. 1 at 11.)

relationship with Plaintiff and directly[3] awarded Defendant CAN "substantially the same project as the FAA project that LinTech held for five (5) years". (*Id.*) Upon Defendants' respective resignation and termination, they retained 12 laptop computers that contained Plaintiff's confidential and proprietary information related to the FAA project. (*Id.* at 13.) After Plaintiff demanded the computers' return, Defendants returned them to Plaintiff on May 22, 2019. (*Id.*)

On May 24, 2019, believing Defendants to have misappropriated its confidential and proprietary information, Plaintiff initiated this lawsuit against Defendants by filing a Verified Complaint for Injunctive and Other Relief (the "Complaint") in Michigan State Circuit Court in Oakland County, Michigan, alleging breach of duty of loyalty and unjust enrichment against Defendant Reddygari, breach of contract against Defendant CAN, and trade secret misappropriation against both Defendants. (ECF No. 1, PageID 7, 14–17.) Upon recognition of the parties' complete diversity, Defendants removed the matter to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1441 and 1446. (*Id.* at 1.) Presently this matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"). (ECF No. 10.) The Motion has been fully briefed, and the Court is dispensing with oral argument pursuant to Local Rule 7.1(f)(2). (ECF Nos. 10, 15,

---

[3] The FAA never publicly solicited bid proposals for the FAA project; it was directly awarded to Defendant CAN without competition. (*Id.* at 12.)

16.) Plaintiff moves the Court to issue a temporary restraining order and preliminary injunction enjoining Defendants from "using and/or disclosing LinTech's confidential and proprietary pricing, technical, process, customer, staffing and labor information." (ECF No. 10, PageID 98–99.)

**II.     Temporary Restraining Order and Preliminary Injunction**

Injunctive relief is "an 'extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in limited circumstances which clearly demand it.' " *Apex Tool Group, LLC v. Wessels*, 119 F. Supp. 3d 599, 606 (E.D. Mich. 2015) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir.2000)). In issuing injunctive relief, the court considers: "(1) 'whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.' " *Id.* (citing *Kentucky v. Hagel,* 759 F.3d 588, 600 (6th Cir.2014). "[I]rreparable harm . . . must weigh in favor of relief for an injunction to issue." *Id.* at 607 (citing *Kelly Servs. v. Eidnes*, 530 F.Supp.2d 940, 949 (E.D.Mich.2008)). Specific findings concerning each of the factors are not necessary when "fewer factors are dispositive of the issue." *Id.* (citing *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir.1997)).

" 'To be granted an injunction, the plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such injury.' " *Id.* at 609 (citing *Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 969 (6th Cir.2002)). Irreparable harm is the most important prerequisite for injunctive relief. *Id.* (citations omitted). The Court concludes that Plaintiff has failed to demonstrate irreparable harm that necessitates the Court's grant of injunctive relief.[4] For the reasons that follow, the Court denies Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

In summary, Plaintiff's lawsuit alleges that Defendants used confidential and proprietary information obtained through their employment with Plaintiff to acquire and replace Plaintiff on a long-held government contract—the FAA project. Plaintiff argues that, without an injunction, Defendants will "use LinTech's pricing and staffing information *in other contexts* to be awarded *other governmental work* competitive to LinTech's interests." (ECF No. 10, PageID 112 (emphasis added).) Because Defendants worked exclusively on the FAA project, Plaintiff's argument that Defendants will use its information for other work is at best tenuous and the future harm to Plaintiff speculative.

---

[4] *See Hacker v. Federal Bureau of Prisons*, No. 06–12425, 2006 WL 2559792, at *8 (E.D. Mich. Sept. 1, 2006) (finding want of irreparable harm dispositive of preliminary injunction motion).

7

Defendants are no longer in possession of Plaintiff's laptop computers containing Plaintiff's confidential and proprietary information. *See Apex Tool Group*, 119 F. Supp. 3d at 609 ("Without access to this information [on plaintiff's laptop], it is unlikely that plaintiff will suffer irreparable harm in the immediate future."). To add, the generality with which Plaintiff alleges the harm evidences its unlikelihood. "Plaintiff has not pointed to any projects that are pending or any that are forthcoming in the near future . . . that defendant is involved with that are competitive with plaintiff. Given that defendant is not in possession of the information he allegedly would use . . . it is difficult to surmise that it is likely that plaintiff will suffer immediate irreparable harm in the future." *Id.* at 609–610. The circumstances here suggest that an alleged wrong has already occurred, but there is little to suggest that a wrong is likely to occur again in the future. *See id.* Furthermore, Plaintiff has not alleged that Defendants downloaded, printed, or are still in possession of their confidential and proprietary information. Plaintiff alleged that its information was sought to secure the FAA project; this, however, does not serve to substantiate a likelihood of impending irreparable harm.

Finally, "[P]laintiff does not suffer irreparable injury if the injury i[s] fully compensable by money damages." *Id.* at 610 (citing *Overstreet v. Lexington–Fayette Urban Cnty. Gov.*, 305 F.3d 566, 578 (6th Cir.2002)). Here, Plaintiff's alleged injuries are trade secret misappropriation and loss of competitive

advantage. Plaintiff, however, has failed to demonstrate how these injuries cannot be adequately compensated by money damages.

Therefore, the Court concludes that Plaintiff has not sufficiently demonstrated an immediate irreparable harm. The other factors require only brief mention. Absent an injunction, there is no harm to others, and therefore the third factor is not relevant to the Court's decision. *Id.* (citing *Patio Enclosures*, Inc., 39 Fed.Appx. at 970). The fourth factor does not weigh in favor of either party because the public has an interest in both protecting confidential information and allowing competition (for employment and between businesses). *Id.* Because the Court's finding that Plaintiff is unlikely to suffer irreparable harm substantially outweighs any merits findings in Plaintiff's favor, the Court need not articulate its specific findings for the first factor. *See id.* at 607.

In sum, when balancing the factors, the Court is not convinced that the present case requires the extraordinary remedy of a preliminary injunction. The Court finds that Plaintiff is unlikely to suffer immediate irreparable harm, which weighs heavily against issuance of a preliminary injunction. With neither the third and fourth factors weighing in Plaintiff's favor, the Court finds the want of immediate irreparable harm dispositive. Therefore, the Court denies Plaintiff's Motion.

Accordingly,

**IT IS ORDERED,** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 10) is **DENIED**.

**IT IS SO ORDERED.**

                                             s/ Linda V. Parker
                                             LINDA V. PARKER
                                             U.S. DISTRICT JUDGE

Dated: July 18, 2019