UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINTECH GLOBAL, INC.,

       Plaintiff,

v.

CAN SOFTTECH, INC., and
SWAPNA REDDYGARI,

       Defendants.                 Case No. 2:19-cv-11600
                                Honorable Linda V. Parker

and

CAN SOFTTECH, INC.,

       Counter-Plaintiff,

v.

LINTECH GLOBAL, INC.,

       Counter-Defendant
_____/

**OPINION AND ORDER (1) DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR REMITTITUR OR NEW TRIAL (ECF NO. 348); (2) GRANTING PLAINTIFF'S MOTION TO AMEND/CORRECT JUDGMENT (ECF NO. 339); AND (3) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR POST-JUDGMENT DISCOVERY AND TO PROHIBIT TRANSFER OF ASSETS (ECF NO. 351)**

     This case is before the Court on the parties' post-trial motions.  After a nine-

day trial, a jury found that Swapna Reddygari breached her duty of loyalty to

Plaintiff LinTech Global, Inc. ("LinTech"), and that Ms. Reddygari and CAN Softtech, Inc. tortiously interfered with LinTech's business relationship or expectancy.  (*See* ECF No. 330.)  The jury also found that LinTech was liable to CAN Softtech on an account stated claim.  (*Id.*)

The jury awarded LinTech damages as follows: $86,070.00 on its breach of duty of loyalty claim against Ms. Reddygari; $206,569.00 on its tortious interference claim against Ms. Reddygari; and $6,546,542.00 on its tortious interference claim against CAN Softtech.  (*Id.*)  The jury awarded CAN Softtech $49,920.00 on its account stated counterclaim against LinTech.  (*Id.*)  On October 30, 2025, the Court entered a Judgment reflecting the jury's award, including "interest and costs as allowed by law."  (ECF No. 333.)

After the Judgment was entered, LinTech filed a "Motion to Amend Judgment to Include Taxable Costs, Pre-Judgment Interest, and Post-Judgment Interest."  (ECF No. 339.)  Pursuant to Federal Rules of Civil Procedure 50(b) and 59, Ms. Reddygari and CAN Softtech (collectively "Defendants") filed a "Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or for New Trial."  (ECF No. 348.)  LinTech filed a "Motion for Post-Judgment Discovery and to Prohibit Transfer of Assets."  (ECF No. 351.)  These motions have been fully briefed.  On Defendants' motion and posting of a supersedeas bond in the amount of $6,850,186.41, the Court has stayed execution

of the Judgment pending further order of the Court. (*See* 12/19/25 Text-Only Order.)

### Defendants' Motion for Judgment as a Matter of Law, Remittitur, or New Trial (ECF No. 348)

Defendants move under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law on LinTech's tortious interference claim. First, based on the Michigan Supreme Court's decision in *Cedroni Association, Inc. v. Tomblinson, Harburn Associates, Architects & Planners, Inc.*, 821 N.W.2d 1 (2012), and the Sixth Circuit's decision in *EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340 (2008), Defendants maintain that LinTech had no reasonable expectation of a continued business expectancy or relationship with the Federal Aviation Administration ("FAA") on its DMS Project. Defendants argue that LinTech also had no reasonable expectation of further work on the DMS Project because the FAA directed it to CAN Softtech.

Next, based on the Michigan Supreme Court's decision in *Hart v. Ludwig*, 78 N.W.2d 895 (1956), Defendants maintain that the Economic Loss Doctrine bars LinTech's tortious interference claim against CAN Softtech. Defendants further argue that LinTech failed to show that Defendants caused the termination of LinTech's relationship with the FAA. For the same reasons, LinTech, alternatively, seeks a new trial pursuant to Federal Rule of Civil Procedure 59.

Defendants also seek a new trial based on two alleged evidentiary errors: (1) the exclusion of John Shoraka's expert testimony and (2) precluding the live testimony of Mark Perraut.[1]  Lastly, Defendants contend that the jury award against CAN Softtech should be remitted to match its award against Ms. Reddygari, and they raise two arguments to support a reduction in the award against CAN Softtech.

First, according to Defendants, there was no evidence presented at trial that LinTech had any business expectancy beyond May 14, 2019, i.e., after the first, one-year $6.9 million contract was awarded by the FAA to CAN Softtech.  The highest damages the jury could have awarded LinTech, Defendants assert, is $959,100 (representing the 13.9% profit margin on the first-year award testified to

---

[1] Defendants list a third reason why a new trial should be granted: "evidence LinTech was no longer entitled to further work on the DMS Project after January of 2023, when it was sold to a much larger company and ceased to be a small business." (ECF No. 348 at PageID.14408.)  However, Defendants failed to develop this argument in their opening brief and did not mention it again in their reply brief (*see generally id.*; ECF No. 360), even though LinTech indicated in its response brief that it presumed the inclusion of this third reason was a scrivener's error of an abandoned argument (ECF No. 354 at PageID14617 n.2).  It is not sufficient to raise an issue in a perfunctory manner and expect the Court to put "flesh on its bones." *United States v. Henrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016).  Arguments adverted to " 'in a perfunctory manner' without an 'effort at developed argumentation'" are deemed forfeited.  *Id.*; *see also Herring v. City of Ecorse*, No. 24-1916, 2025 WL 2105263, at *5 (6th Cir. Sept. 16, 2024) (quoting *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019)) (recognizing that the Sixth Circuit has used "waiver" and "forfeiture" interchangeably sometimes, but explaining that "[w]aiver is affirmative and intentional, whereas forfeiture is a more passive failure to make the timely assertion of a right").

by LinTech's expert).  Second, Defendants argue that the award against CAN

Softtech should be reduced because "there is no logical connection between the

damages awarded against Ms. Reddygari and those awarded against CAN

Softtech."  (ECF No. 348 at PageID.14415-16.)

**Whether Defendants Forfeited Their Rule 50(b) Motion**

LinTech argues that Defendants forfeited their Rule 50(b) motion by failing

to properly argue for judgment as a matter of law under Rule 50(a) during trial.

LinTech maintains that while Defendants' counsel expressed an "intent" to make

their Rule 50(a) motion, they vaguely identified only one ground on which they

sought to premise the motion ("as to loss profits"), and never actually made the

motion.

Trial Proceedings

On the sixth day of the trial, after LinTech rested, counsel for Defendants

stated that they "intend to bring a motion for judgment as a matter of law."  (ECF

No. 344 at PageID.13969.)  Counsel stated, however, that Defendants first wanted

to get additional evidence into the record before making the request.  (*Id.*)  On the

eighth day, while discussing whether the jury should be advised that a "claw back"

of Ms. Reddygari's compensation was a form of damages they could consider,

Defendants' counsel again shared that they "intend to seek a motion for judgment

5

[as a] matter of law as to loss profits for the duty of loyalty . . ..” (*See* ECF No. 329 at PageID.12718.)

The following day, day nine of trial, after Defendants rested and were prompted by the Court, their counsel stated: “We would like to make an oral motion under Rule 50 for a judgment as a matter of law.” (*See* ECF No. 335 at PageID.12837.) Defense counsel specifically asked whether the Court wanted him to go through the grounds then or later, and the Court indicated later in the day. (*Id*. at PageID.12837-38.) To “make sure” this satisfied the requirement that the motion be made before the jury is charged, defense counsel expressed: “Just for point of clarification just so we’re not in—we don’t—none of the parties waive their rights. I know we’ve made the oral motions.” (*Id*. at PageID.12838.) The Court responded: “Right” and “They do satisfy that.” (*Id*.)

Later that day, again while discussing instructions, Defendants’ counsel mentioned their Rule 50 motion, noting that a change Defendants sought was “in line with [their] Rule 50 motion, that we don’t believe that lost profits would in fact be a proper measure of damages for a breach of the duty of loyalty.” (*Id*. at PageID.12860-61.) However, Defendants did not again mention their Rule 50(a) motion or seek to present the grounds or argument in support of the motion that

day or before the jury reached its verdict the following day.[2] After the jury

returned its verdict and was excused, defense counsel expressed its intent to

"renew [their] Rule 50 motion" and the Court set a briefing schedule for the

motion. (ECF No. 347 at PageID.14377-78.)

Applicable Law & Discussion

Rule 50(a) provides for motions for judgment as a matter of law during trial:

> If a party has been fully heard on an issue during a jury
> trial and the court finds that a reasonable jury would not
> have a legally sufficient evidentiary basis to find for the
> party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law
> against the party on a claim or defense that, under the
> controlling law, can be maintained or defeated only with
> a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). Rule 50(a) instructs when and how a motion must be: "A

motion for judgment as a matter of law may be made *at any time before the case is*

*submitted to the jury*. The motion must specify the judgment sought and the law

and facts that entitle the movant to the judgment." *Id.*; *see also Hanover Am. Ins.*

*Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 780 (6th Cir. 2020) (indicating

---

[2] The ninth day of trial concluded with closing arguments and the Court's reading
of the jury instructions. (*See* ECF No. 335.) The jury then begin their
deliberations, which they concluded the following afternoon. (*See id.*; ECF No.
347.)

"that the correct time for making a Rule 50(a) motion is before the case is submitted to a jury").

Rule 50(b) provides for "*Renewing* the Motion After Trial[.]"  Fed. R. Civ. P. 50(b) (emphasis added).  Rule 50(b) provides in relevant part:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment . . .  the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

*Id.*  "The wording of Rule 50(b) shows that it is conditional on a Rule 50(a) motion having been made."  *Hanover*, 974 F.3d at 780.  Further, "[a] Rule 50(b) motion is only a renewal of the preverdict motion, and it can be granted only on grounds advanced in the preverdict motion."  *Id.* (quoting *Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320, 328 (6th Cir. 2017)) (internal quotation marks and additional citation omitted).

As Rule 50(a) expressly states, the moving party must "specify the judgment sought and the law and facts that entitle the movant to the judgment."  Fed. R. Civ. P. 50(a)(2).  This specificity requirement "is grounded in reasoning related to the Seventh Amendment jury right (as well as basic fairness)."  *Hanover*, 974 F.3d at 783.  "*Kay* specifies that 'this requirement protects the plaintiff's Seventh

8

Amendment right to a jury trial by requiring that parties raise important issues *before* the case is submitted to the jury.'" *Id.* (quoting *Kay*, 709 F. App'x at 328) (emphasis in *Kay*) (additional quotation marks and citation omitted). As the Sixth Circuit explained in *Hanover*:

> The point of presenting it the first time is not only to present the argument underlying the Rule 50(a) motion to the judge, but also to opposing counsel, and so give them time to remedy any defects in their case before it goes to the jury. As one of our sister circuits has noted, the importance of this notice goes beyond simply providing an opportunity to remedy evidentiary gaps:
>
> > "By requiring a litigant to raise all arguments in its initial Rule 50(a) motion, the trial court is able to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and opposing counsel is alerted to any insufficiency before the case is submitted to the jury, giving the opposing party a chance to cure any defects in its legal theories or proof should the motion have merit."

974 F.3d at 786-87 (quoting *Puga v. RCS Sols., Inc.*, 922 F.3d 285, 291 (5th Cir. 2019)); *see also id.* at 780 (quoting *Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010) (ruling that "[t]he Defendants' failure to make a pre-verdict motion for judgment as a matter of law under Rule 50(a) on the grounds of qualified immunity precluded them from making a post-verdict motion under Rule 50(b) on that ground")).

Here, like in *Hanover*, "we have no specificity at all[.]" *Id.* at 782. At most, Defendants indicated an intent to assert a motion related to lost profits—notably, not a ground asserted in the pending Rule 50(b) motion—but then never made a proper motion before a verdict was rendered. Also like in *Hanover*, this Court never denied a request by Defendants to fully present their motion and only suggested that they do so later in the day. It was not the Court's obligation to make sure Defendants preserved their motion. *See Hanover*, 974 F.3d at 784 n.9 (citing *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 426 (6th Cir. 2004)) (explaining that the outcome might be different if the court "had affirmatively and unambiguously *forbidden* counsel from making a Rule 50(a) motion at trial . . . [b]ut short of that, the general rule that litigants must assert their own rights to preserve them continues to obtain").

*Hanover* also instructs that this Court lacked the authority to deem a Rule 50(a) motion as having been made by Defendants. 974 F.3d at 783; *see also id.* at 784 ("Against the weight of this authority, Hanover presents no argument that the district judge has the authority to allow parties to preserve un-made, nonspecific 50(a) motions beyond the jury's verdict. Therefore, even if that is what the district court intended to do, we hold that it had no power to do so."). A district judge cannot " 'absolve' a litigant of his 'procedural obligations' under [Rule 50]." *Id.* at 784 (quoting *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir.

10

2009)). Thus, Defendants' failure "to speak up" before the case went to the jury renders this Court "powerless to review" their Rule 50(b) motion. *See House v. Player's Dugout, Inc.*, No. 22-5843, 2024 WL 495998, at *13 (6th Cir. Feb. 8, 2024) (first quoting *Maxwell v. Dodd*, 662 F.3d 418, 420-21 (6th Cir. 2011), then quoting *Hanover*, 974 F.3d at 779); *see also Hillside Prods., Inc. v. Cnty. of Macomb*, 389 F. App'x 449, 460 (6th Cir. 2010) (finding that although plaintiffs claimed they were prohibited from elaborating on their Rule 50 motion at trial, the record indicated that in fact counsel requested to reserve the Rule 50 motion so that the case could proceed, the court acknowledged that counsel had preserved the position, but counsel did not ever elaborate on the Rule 50 claims; accordingly, plaintiffs could not bring a renewed Rule 50(b) motion after trial).

Defendants nevertheless argue that LinTech's forfeiture argument "raises a distinction without a difference" because "[p]arties do not need to re-raise legal issues in a Rule 50(a) motion that they raised on summary judgment." (ECF No. 360 at PageID.14716 (citing *Dupree v. Younger*, 598 U.S. 729 (2023).) In *Dupree*, the Supreme Court held that "purely legal issues—that is, issues that can be resolved without reference to any disputed facts"—if raised by a party in a summary judgment motion, are preserved for appeal even though the party did not raise the issue in a Rule 50 motion. 598 U.S. at 731, 735. The *Dupree* Court left it to the Courts of Appeals to identify which matters are purely legal. *Id.* at 737-78.

The issue, however, must have been "first squarely presented in a motion for summary judgment[.]" *Hanover*, 974 F.3d at 785 n.10; *id.* at 786 n.11 ("Similarly, whatever one thinks of our exception allowing review, after a jury verdict, of the denial of summary judgment on questions of pure law, which is embraced by some of our sister circuits, in those cases the motion for summary judgment did present the issue squarely.").

Prior to *Dupree*, the Sixth Circuit indicated that "[a] question is considered purely legal . . . if it involves 'disputes about the substance and clarity of preexisting law[,]' . . . 'which can be asked and answered without reference to the facts of the case.'" *Zitzow v. Auto-Owners Ins. Co.*, No. 22-5549, 2023 WL 2033792, at *6 (Feb. 16, 2023) (first quoting *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011), then quoting *Hanover*, 974 F.3d at 785 n.10); *see also Hanover*, 974 F.3d at 785 n.10 (citing *Ortiz*, 562 U.S. at 190; *Kay v. United of Omaha Life Ins. Co.*, 562 F. App'x 380, 385 (6th Cir. 2014)).  The exception for "pure questions of law," the Sixth Circuit advised in *Hanover*, is "exceptionally narrow, covering only truly abstract questions that 'can be asked and answered *without reference to the facts of the case.*'"  *Id*. at 789 (quoting *Kay*, 562 F. App'x at 385) (emphasis added in *Hanover*).  The *Hanover* court also noted that its "ruling does not put all legal arguments out of reach except through the means of a Rule 50 motion."  *Id.* at 789 n.12.  One example are duly objected to evidentiary rulings.  *Id.*

Applying this law, the Court finds that Defendants forfeited the following arguments by not asserting a proper Rule 50 motion: (i) that LinTech had no reasonable expectation of further DMS Project work because the FAA directed it to CAN Softtech; and (ii) that LinTech failed to show that Defendants caused the termination of LinTech's relationship with the FAA.  Even if specifically raised in Defendants' summary judgment motion, these arguments are not pure questions of law, "which can be asked and answered without reference to the facts of the case." The Court turns to Defendants' remaining arguments.

### Standards of Review

In this matter, where jurisdiction is based on diversity of citizenship, the standard applicable to a Rule 50(b) motion is the standard applicable under the law of the forum state.  *Kay*, 709 F. App'x at 327 (citing *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 405 (6th Cir. 2006)).  Under Michigan law, "judgment as a matter of law is appropriate when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'"  *Id.* (quoting *Mike's Train House*, 472 F.3d at 405).

The Sixth Circuit has interpreted Rule 59 as "requir[ing] a new trial only 'when the jury reaches a seriously erroneous result as evidenced by (1) the verdict being against the clear weight of the evidence; (2) the damages being excessive; or

13

(3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'"[3] *Contract Design Grp., Inc. v. Wayne State Univ.*, 635 F. App'x 222, 232 (2015) (quoting *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir. 2012)) (brackets omitted). For the first ground, district courts "are not free to reweigh the evidence and set aside the jury verdict because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Slasinski v. Confirma, Inc.*, 459 F. App'x 493, 495 (6th Cir. 2012) (quoting *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000)). "Rather, a new trial should be granted only if, in light of the evidence, no reasonable juror could reach the challenged verdict." *Id.* (citing *Barnes*, 201 F.3d at 820-21).

"With respect to remittitur," the Sixth Circuit has "held that district courts must let a jury's award for damages 'stand unless the award is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake.'" *Contract Design*, 635 F. App'x at 232 (quoting *Wallace v. FedEx Corp.*, 764 F.3d 571, 593 (6th Cir. 2014)) (brackets omitted). "This is consistent with the Michigan standard, which reviews purportedly excessive jury verdicts by considering, among other factors, 'whether the verdict was the result of

---

[3] While a sufficiency-of-the evidence claim is precluded by the failure to assert a proper Rule 50 motion, a claim asserting that the jury's verdict is "against the clear weight of the evidence" is not forfeited. *See Hillside Prods.*, 389 F. App'x at 456.

14

mistake of law or fact.'"  *Id.* (ellipsis omitted) (quoting *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 400 (Mich. 2004)).

### Whether, As a Matter of Law, LinTech Lacked a Business or Relationship Expectancy

To prevail on its tortious interference claim, LinTech had to prove that it had a valid business relationship or expectancy with respect to the FAA's DMS Project. *See Courser v. Allard*, 969 F.3d 604, 620-21 (6th Cir. 2020) (citing *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005)).  Defendants argue that *Cedroni* and *EBI-Detroit* preclude LinTech from establishing this element, as a matter of law.

The plaintiff in *Cedroni* was the lowest bidder on a public contract with a public school district to provide architectural services for a construction project. 821 N.W.2d at 2.  After the school district awarded the contract to the second lowest bidder, the plaintiff sued the defendant, which had assisted the school district with the bid selection.  *Id.*  Relying on "the longstanding rule in Michigan that a disappointed low bidder on a public contract has no standing to sue in order to challenge the award of a contract to another bidder[,]" the Michigan Supreme Court held that the plaintiff could not have had a valid business expectancy of being awarded the contract because it "had no reasonable expectation of being awarded the contract, only 'wishful thinking.'"  *Id.* at 3 (citations omitted).

15

Relying on *Cedroni*, the Sixth Circuit in *EBI-Detroit* held that the plaintiff—another unsuccessful bidder on a municipal contract—lacked a valid business relationship or expectancy to support its tortious interference claim. 279 F. App'x at 352-53. "[H]olding otherwise[,]" the Sixth Circuit reasoned, "would give any low responsive bidder an immediate business expectancy in the government contract at issue." *Id.* at 353. According to the court, the plaintiff had only "a 'unilateral hope' of winning the contract, nothing more[.]" *Id.*

Unlike *Cedroni* and *EBI-Detroit*, LinTech was not the lowest bidder who lost a bid to another party. There was no bidding process. Moreover, LinTech was not just some entity seeking to secure the FAA's award on the DMS Project. LinTech had been doing business with the FAA for years, serving as the FAA's contractor on the DMS Project. The FAA had repeatedly renewed the award to LinTech. In fact, according to the evidence, Ms. Reddygari told LinTech that the FAA intended to renew its contract in 2019. Therefore, the jury reasonably could conclude that LinTech's expectancy "had passed the point of 'wishful thinking' and matured to a 'reasonable likelihood or probability,' as *Cedroni* requires. *360 Constr. Co. v. Atsalis Bros. Painting Co.*, 915 F. Supp. 2d 883, 901 (E.D. Mich. 2012) (quoting *Cedroni*, 821 N.W.2d at 3).

16

**Whether the Economic Loss Doctrine Bars LinTech's Tortious Interference Claim against CAN Softtech**

The economic loss doctrine prohibits a party to a contract from bringing tort claims that are factually indistinguishable from breach of contract claims. *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 240-41 (6th Cir. 1994). The doctrine flows from the recognition that "contract law and tort law are separate and distinct, and courts should maintain that separation in allowable remedies." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 544 (Mich. Ct. App. 1995) (quotation marks and citation omitted). Thus, the doctrine generally precludes a tort action unless the plaintiff could maintain the action even absent a contractual relationship with the defendant. *See Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783, 786-88 (Mich. Ct. App. 2002);

If the plaintiff alleges that the defendant violated a legal duty that is separate and distinct from the defendant's contractual obligations, the doctrine does not apply. *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016); *Fultz v. Union-Commerce Assoc.*, 683 N.W.2d 587, 592 (Mich. 2004). Stated differently, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Tyson*, 836 F.3d at 582-83 (quoting *Hart v. Ludwig*, 79 N.W.2d at 898). "Critically," . . . "the economic loss doctrine has never been applied [by Michigan courts] to a contract for services." *Fraser Engine Rebuilder, Inc. v. Lancaster*, No. 360110, 2023 WL

17

5281853, at *5 (Mich. Ct. App. June 8, 2023) (citing *Quest Diagnostics, Inc. v. MCI Worldcom, Inc.*, 656 N.W.2d 858, 863 (2002)); *see also Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 550 (6th Cir. 1995) (agreeing with the district court that the economic loss doctrine did not apply because Michigan courts apply the doctrine only in situations involving the sale of goods; and explaining that "[t]he doctrine is associated with 'transactions in goods,' and not with transactions in services") (internal citations omitted); *1-800 Bathtub, LLC v. ReBath, LLC*, No. 357932, 2024 WL 1689099, at *5 (Mich. Ct. App. Apr. 18, 2024).  Lastly, it does not apply to a select group of intentional torts, including tortious interference with a business relationship or expectancy.  *See Huron Tool*, 532 N.W.2d at 544; *Atlas Tech., LLC v. Levine*, 268 F. Supp. 3d 950, 966 (E.D. Mich. 2017).

LinTech and CAN Softtech's contract was for services.  Further, the duty not to interfere with LinTech's relationship with the FAA was a duty existing separate and distinct from their contract.  Thus, the Court concludes that LinTech's tortious interference claim against CAN Softtech is not barred, as a matter of law, by the economic loss doctrine.

### The Exclusion of John Shoraka's Testimony

Before Defendants called Mr. Shoraka as a rebuttal witness at trial, LinTech's counsel sought to voir dire him outside the jury's presence because

counsel anticipated that he would not be qualified to testify as an expert.  (ECF No. 335 at PageID.12765-66.)  LinTech's counsel believed that Mr. Shoraka, a non-lawyer, was being called as a witness solely to interpret federal acquisition regulations and Small Business Administration laws and opine on whether Defendants engaged in unethical conduct, which he had been disqualified from doing in the only previous litigation where he was an anticipated trial witness.  (*Id.* at PageID.12765-67)  In response, Defendants indicated that Mr. Shoraka's testimony would be about custom and practice in the federal government or, more specifically, how federal contracting and procurement work, procurement integrity, and the operations of government set-aside programs. (*Id*. at PageID.12768-69.)

The Court indicated that it would not allow Mr. Shoraka to interpret federal laws or regulations for the jury or testify to ultimate conclusions invading the province of the jury—for example, that Defendants did "nothing wrong." (*Id*. at PageID.12771.)  The Court expressed some concern that his testimony about government procurement and contracting generally was cumulative.  (*Id*.)  Nevertheless, the Court allowed Defendants to call Mr. Shoraka later that morning. (*See id.* at PageID.12775, 12804.)

However, after going through Mr. Shoraka's qualifications and experience and allowing LinTech's counsel to question him outside the jury's presence, the Court precluded his testimony.  (*See* ECF No. 335 at PageID.12804-31.)  The

19

Court indicated that it found any testimony concerning ethical violations irrelevant because the claim at issue was breach of duty of loyalty, not breach of an ethics provision.  (*Id.* at PageID.12814-15.)  Defense counsel responded that they had no issue with that ruling but wanted to explore two other areas with Mr. Shoraka.  (*Id.* at PageID.12820.)

The first was to have Mr. Shoraka explain the difference between a contract expiring and a contract being terminated, and what happened in the case of LinTech's contract with the FAA on the DMS Project.  (*See id.* at PageID.12820-21.)  As LinTech's counsel pointed out in response, however, Mr. Shoraka had no experience in terms of the award of federal contracts, and he certainly had no experience with the FAA and the particular project at issue.  (*Id.* at PageID.12821-22.)  Three FAA personnel on the project already had testified on the subject.  The Court found that Mr. Shoraka's testimony did not add anything on the subject.  (*Id.* at PageID.12823.)

The second area Defendants wanted to explore with Mr. Shoraka was the meaning of the no cost period of performance extension the FAA awarded to LinTech before awarding the DMS Project to CAN Softtech.  (*See* ECF No. 335 at PageID.12823.)  According to counsel, Mr. Shoraka would testify that anybody in the industry would have realized that this extension was a clear signal that LinTech's work on the project was done.  (*Id.* at PageID.12824.)  But, as the Court

20

pointed out, Ms. Reddygari testified extensively about her view of the extension and what she believed it meant and there was evidence in the record as to how she acted in response to the extension. (*Id.*)  There also had been testimony from several witnesses who had testified about the specific program and the FAA's intent to award future contracts to LinTech.  Mr. Shoraka, in comparison, was neither a contracting officer nor involved or familiar with the FAA or the particular contract or program at issue.

After reviewing Mr. Shoraka's actual report, the Court concluded that only two of his ten conclusions (numbers eight and nine) applied to the case, but that they were impermissible as they constituted legal interpretations or invaded the jury's fact-finding role.[4]  (*See id.* at PageID.12829-30.)  The Court concluded that Mr. Shoraka's testimony would not help the trier of fact understand the evidence or determine a fact at issue.  Further, the Court concluded that his testimony would confuse the jury.  (*Id.* at PageID.12831, 12833.)  His conclusion (the sixth in his conclusions) and testimony that the contract was expiring at the end of its term in

---

[4] Most of Mr. Shoraka's expert report and conclusions related to the opinions he was retained to provide, which were not the focus of his proposed trial testimony: "on small business contracting laws and regulations, requirements for the 8(a) Business Development Program, the Women-Owned Small Business Program, and the Economically Disadvantaged Women-Owned Small Business Program, common issues that small businesses encounter when pursuing and being awarded federal government contracts, and to respond to opinions disclosed by experts on behalf of Plaintiff."

May 2019 was not in dispute. Thus, the Court did not see the need for expert testimony on the subject, which could potentially confuse the jury.

Defendants now contend that they are entitled to a new trial based on the exclusion of Mr. Shoraka as an expert witness on the ground that his testimony would have been cumulative. Defendants cite to the Tenth Circuit's decision in *Adamscheck v. American Family Mutual Insurance Co.*, 818 F.3d 576, 589-90 (2016), in support. For starters, this Court did not exclude Mr. Shoraka's testimony only for the reason that it was cumulative. Additionally, unlike the district court in *Adamscheck*, this Court allowed defense counsel to explain in detail what issues Mr. Shoraka would address and explained why it was precluding his testimony. The Court does not find that it erred in excluding this testimony for the reasons it provided.

### The Exclusion of Mr. Perraut's Live Testimony

Discovery from the FAA was an issue throughout this litigation. In fact, LinTech had filed a separate lawsuit against the FAA to obtain records relevant to the claims here. *See LinTech Global, Inc. v. Fed. Aviation Admin.*, No. 20-cv-12062 (E.D. Mich. filed July 31, 2020). Both parties sought the oral deposition of relevant FAA employees Mark Perraut, Linda Navarro, and Christine Yezzo. (*See* ECF No. 157 at PageID.3405; ECF No. 157-3 at PageID.3429-33; *see also* ECF No. 169.)

22

However, pursuant to federal regulations, in litigation between private parties, FAA employees are prohibited from providing testimony at trial or at a hearing before a court, and the agency decides whether their testimony may be taken by way of a deposition, affidavit, or a set of interrogatories.  *See* 49 C.F.R. §§ 9.9-15.  Here, the FAA chose to limit discovery of the FAA witnesses to written answers to written questions from both sides.  The regulations require a party seeking such testimony to declare that "the party will not . . . seek the testimony of the witness at a hearing or trial in the proceeding.  49 C.F.R. § 9.15(a)(7).

LinTech moved the Court to require the FAA witnesses to appear for oral depositions.  The Court denied the request, concluding that the regulations governed and precluded a court from compelling these government witnesses to comply with a deposition subpoena.  Defendants, also wanting to take the oral deposition of these witnesses and obtain their appearances at trial, sought a waiver from the FAA through government counsel.[5]  LinTech contacted counsel for the FAA to inquire about Defendants' waiver request and never received a response.

Prior to trial, LinTech moved to preclude Defendants from admitting the written answers from these FAA witnesses as evidence.  (ECF No. 256.)  The Court denied the motion, finding the requirements for their admission under

---

[5] When the parties prepared their Joint Final Pre-Trial order on January 6, 2025, Defendants still had not obtained a waiver from the FAA.  (*See* ECF No. 311 at PageID.11269.)

Federal Rule of Civil Procedure 32 satisfied.  (ECF No. 303 at PageID.10915-18.)  The Court's decision was premised in part on the fact that these witnesses were rendered "unavailable" at trial due to the federal regulations.  While Defendants continuously expressed a desire for their live testimony, including in the parties' draft of the joint final pretrial order and at a settlement conference shortly before trial began, there was no indication to LinTech's counsel or the Court that their attempts to secure their live trial testimony had been approved by the FAA or otherwise secured.  Nor had the progress of their attempts been shared.

Despite the fact that it had long been established that these FAA employees would not be permitted to testify at trial, and the parties litigated under the scope of the federal regulations, Defendants' counsel mentioned at an October 7, 2025 hearing on a motion unrelated to this testimony that Mr. Perraut would be voluntarily testifying in Defendants' case.  (ECF No. 310 at PageID.11190.)  At the hearing, LinTech objected to Defendants calling Mr. Perraut in person and argued that, if they did, LinTech should be able to call him in their case in chief.  Although it was acknowledged that Mr. Perraut was outside the court's subpoena powers, defense counsel offered to see if he would voluntarily appear earlier in the trial for LinTech's case.

LinTech, however, then decided to seek the exclusion of Mr. Perraut's live testimony, completely.  (*See* ECF No. 313.)  In a motion filed just after midnight

on October 17, 2025, LinTech argued that it would be severely prejudiced if Mr. Perraut was now able to testify when he had been deemed unavailable for the last six years and limited discovery had been available from him.  (*See id*.)  LinTech asserted that there was no indication that Mr. Perraut was now authorized to testify, as LinTech had not seen a waiver by the FAA, and that Defendants apparently had contact information for Mr. Perraut which they had failed to share with LinTech. (*See id*.)

During the proceedings on October 17, Defendants informed LinTech and this Court for the first time that Mr. Perraut had retired from the FAA on September 29, 2025.  (ECF No. 323 at PageID.12029. 12031.)  Defendants therefore argued that the regulations precluding his testimony no longer applied.  (ECF No. 323 at PageID.12029.)  They made the same argument, as well as others, in a subsequently filed response brief.  (ECF No. 315.)  To gain more information, the Court directed several questions to the parties, which it asked them to respond to in writing.  (*See* ECF Nos 318, 319.)

In their response, Defendants indicated that they had learned about Mr. Perraut's retirement in late August or early September, presumably from Ms. Reddygari.  (ECF No. 318 at PageID.11427.)  She had Mr. Perraut's personal contact information from when she worked with him on the DMS Project, which she shared with her counsel on October 3, 2025.  (*Id.* at PageID.11429.)

25

Defendants also shared on the next day of trial that: (a) unbeknownst to LinTech's counsel, defense counsel had been working with a different government attorney to obtain a waiver for the trial testimony of the FAA witnesses than counsel for both sides had usually interacted with regarding discovery in this matter; and (b) despite having Mr. Perraut's direct contact information and a specific request by LinTech's counsel for the information, they did not share the information for fear that LinTech would try to dissuade Mr. Perraut from appearing to testify live at trial.[6] (*See* ECF No. 343 at PageID.13603-04, 13606, 13610.)

The Court decided to not allow Mr. Perraut's live testimony, finding unfair prejudice to LinTech particularly because Defendants sought his live testimony to address matters not covered in the written questions and answers the parties were restricted to during discovery. (*See id.* at PageID.13602.)  Instead, the Court found it fair to both sides if his testimony was limited to the questions and answers to which they had access.  (*Id.* at PageID.13602-03.)

Defendants now contend that they are entitled to a new trial based on the exclusion of Mr. Perraut's live testimony.  They argue that it was error for the Court to apply the federal regulations when Mr. Perraut was no longer a federal employee.  They also argue that LinTech lacked standing to enforce the

---

[6] In compliance with federal regulations, all communications and requests for discovery from the FAA witnesses had been channeled through counsel for the FAA.

regulations. Defendants maintain that they suffered prejudice due to the exclusion of the matters which Mr. Perraut would have addressed had his testimony not been limited to his answers to the parties' written questions.

Defendants disregard the actual reason why the Court precluded Mr. Perraut from testifying in person at trial. The Court did not exclude Mr. Perraut's live testimony because the federal regulations restrict such testimony from federal employees absent a waiver from the government. The regulations were relevant to the Court's decision only because the parties had been operating under their application for the six years this case had been pending before trial. Access to these witnesses had been restricted due to the regulations and despite both side's attempts to explore other avenues of discovery. And because Defendants failed to inform LinTech or the Court that Mr. Perraut was retiring and would no longer be subject to the regulations when they learned of this in August 2025, and only shared this fact mid-way through trial, they deprived LinTech of the same opportunities that Defendants had with respect to obtaining information from him before being presented with his testimony at trial.

Instead of relying on the federal regulations, the Court relied on Federal Rule of Evidence 403 when ruling that, under all of the circumstances, it would unfairly prejudice LinTech to allow Mr. Perraut to testify live when the parties had been restricted to his answers to written questions throughout this litigation. The

27

Court believes it was proper to exclude Mr. Perraut's live testimony because the nature of his anticipated testimony—that being, his answers to the parties' written questions—had changed to such an extent that permitting him to testify to additional matters would cause unfair surprise to LinTech.  Defendants may have listed Mr. Perraut on their witness list.  However, it always had been assumed, and reasonably so, that his testimony was limited to his answers to the parties' written questions.  Defendants improperly withheld information that would have afforded LinTech fair access to Mr. Perraut.  "One clear purpose of the discovery rules is to facilitate fact finding and prevent unfair surprise." *Dunlap v. City of Okla.*, 12 F. App'x 831, 834 (10th Cir. 2001) (citing Fed. R. Civ. P. 26 and Advisory Comm. Notes; *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Thus, Defendants fail to convince the Court that the exclusion of Mr. Perraut's live testimony entitles them to a new trial.

**Whether the Jury's Award Against CAN Softtech Should be Remitted**

Defendants argue that they are entitled to remittitur with respect to the jury's award of $6,546,542.00 against CAN Softtech on LinTech's tortious interference claim, when it awarded $206,569.00 on the same claim against Ms. Reddygari. First, Defendants argue that there was no evidence presented at trial that LinTech's business relationship or expectancy lasted beyond May 14, 2019, that being the first, one-year $6.9 million contract originally awarded to CAN Softtech.  Further,

28

they argue there was no evidence to support that LinTech could have received an award exceeding the amount of revenue. Second, Defendants maintain that there is no logical connection between the damages awarded against Ms. Reddygari and those awarded against CAN Softtech.

As previously stated, "[a] jury's damages 'award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake.'" *Wallace v. FedEx Corp.*, 764 F.3d 571, 593 (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 443 (6th Cir. 2000)). The Sixth Circuit has "held that a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Id.* (quoting *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990)) (additional quotation marks and citation omitted). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive; resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Id.* (brackets omitted) (quoting *Farber*, 917 F.3d at 1395). When making that assessment, the "trial court may not substitute its judgment or credibility determinations for those of the jury." *Id.* (quoting *Farber*, 917 F.3d at 1395). The trial court "abuses its discretion in ordering either a remittitur or new

29

trial when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses." *Id.* (quoting *Farber*, 917 F.3d at 1395).

Viewing the evidence in a light most favorable to LinTech, the Court cannot conclude that the jury's award is beyond the range supportable by proof; so excessive as to shock the conscience; or the result of a mistake. The jury found that Defendants tortiously interfered with LinTech's business expectancy in the FAA's DMS Project, securing the contract for themselves and then receiving $47 million in revenue thereafter. The jury could have concluded that, but for Defendants' interference, LinTech likely would have realized a continuing benefit from its relationship with the FAA—in other words, retention on the contract—for more than just one year based on the improvements in performance LinTech achieved after hiring and paying Ms. Reddygari to manage the project.[7] Thus, the jury's award did not necessarily have to reflect a 13.9% profit margin on the first, one-year $6.9 million contract originally awarded to CAN Softtech.

The discrepancy between the award against Ms. Reddygari and CAN Softtech also is not a basis for a remittitur. It may not be evident to the parties or the Court how the jury calculated the damage awards or why the award against CAN Softtech was significantly higher. Nevertheless, "[a] verdict should not be

---

[7] The jury also could have concluded that LinTech was capable of handling the continued project, even though it was much larger in scope than what LinTech had handled previously.

set aside simply because the method of computation used by the jury in assessing damages cannot be determined, unless it is not within the range of evidence presented at trial." *Farley v. Country Coach Inc.*, 403 F. App'x 973, 981 (6th Cir. 2010) (quoting *Diamond v. Witherspoon*, 696 N.W.2d 770, 782 (Mich. Ct. App. 2005)).  As discussed, the jury's award against CAN Softtech is within the range supported by the evidence adduced at trial.

## Conclusion

In summary, the Court finds that Defendants forfeited two arguments raised in support of their Rule 50 motion: (i) that LinTech had no reasonable expectation of further DMS Project work because the FAA directed it to CAN Softtech; and (ii) that LinTech failed to show that Defendants caused the termination of LinTech's relationship with the FAA.  The Court further holds that LinTech's tortious interference claim does not fail as a matter of law based on *Cedroni* or the economic loss doctrine.  Defendants are not entitled to a new trial based on the exclusion of Mr. Shoraka's testimony or the live testimony of Mr. Perraut.  Lastly, there is not a basis to remit LinTech's damages.

## LinTech's Motion to Amend Judgment to Include Taxable Costs, Pre-Judgment Interest, and Post-Judgment Interest

The Court's Judgment included "interest and costs as allowed by law[.]" (ECF No. 333.)  The Court anticipated that LinTech would subsequently submit its Bill of Costs, and hoped that it, or the parties jointly, would submit a proposed

31

amended judgment including the taxed costs by the Clerk of the Court and the exact interest due. Instead, LinTech filed a motion seeking an amended judgment including those amounts. (ECF No. 339.)

In response to LinTech's motion, Defendants do not dispute LinTech's claimed costs, the interest on those costs, or the post-judgment interest rate. (*See* ECF No. 352.) Defendants argue, however, that there is only a "single pot of damages, totaling $6,546,542[,]" for which Ms. Reddygari and CAN Softtech are jointly and severally liable. (*Id*. at PageID.14544.) Relying primarily on *Stryker Corporation v. XL Insurance Co.*, No. 1:05-cv-51, 2015 WL 1944599 (W.D. Mich. Apr. 29, 2015), Defendants also argue that prejudgment interest should be calculated to reflect that the FAA paid CAN Softtech over the course of six years. (*Id*. at PageID.14544-45.) In other words, Defendants argue, the revenue CAN Softtech earned after securing the contract did not immediately constitute lost profits for LinTech, and, therefore, interest should be calculated only from when amounts were paid by the FAA.

This Court rejects Defendants' argument that the cap on damages is $6,546,542, to be imposed jointly and severally against Defendants. The Verdict Form, approved by the parties, asked the jury to identify the amount of damages it found LinTech proved by a preponderance of the evidence were caused by Ms. Reddygari's tortious interference and then the amount it found LinTech provided

32

by a preponderance of the evidence were caused by CAN Softtech's tortious interference. (*See* ECF No. 330 at PageID.12721.) The jury found different amounts for each defendant. As the Court held above, it does not find remittitur warranted as a result.

Specifically as it related to LinTech's tortious interference claim, the jury was instructed in part that they "should award LinTech an amount of money shown by a preponderance of the evidence to be fair and adequate compensation for such loss or damages as proximately resulted from the tortious interference." (ECF No. 335 at PageID.12955-56.) While more specific instructions were provided as to lost profits, the jury was not limited to this form of damages. Evidence supported the jury's damage awards against Ms. Reddygari and CAN Softtech. The Court does not find it appropriate to adjust the jury's verdict and limit damages to the joint and several award suggested by Defendants.

Turning to interest, as jurisdiction here is premised on diversity, this Court must apply the substantive law of Michigan. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). "Prejudgment interest is a substantive element of damage which must be determined under state law." *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 922 (6th Cir. 2000) (citations omitted). Under Michigan law, statutory interest runs "from the date of filing the complaint" and "is calculated on

33

the entire amount of the money judgment, including attorney fees and other costs." Mich. Comp. Laws § 600.6013(8).  Section 600.6013 "is remedial in nature and is to be construed liberally in favor of the prevailing party."  *Perceptron*, 221 F.3d at 923 (citing *Denham v. Bedford*, 287 N.W.2d 168 (Mich. 1980); *Phinney v. Perlmutter*, 564 N.W.2d 532, 549 (Mich. Ct. App. 1997)).

As the district court summarized in *Stryker*, Michigan courts find that prejudgment interest runs from the date of the complaint for claims arising before the filing, but not for claims arising after the complaint was filed.  *Stryker*, 2015 WL 1944599, at *4 (collecting Michigan court decisions).  With respect to prejudgment interest under Michigan law, the Sixth Circuit has distinguished between claims arising after the complaint was filed and the quantification of damages that awaited later events.  *Perceptron*, 221 F.3d at 923 (holding that prejudgment interest ran from the filing of the complaint even though the defendant's continued breach resulted in damages accruing thereafter); *see also Seton Co. v. Lear Corp.*, 198 F. App'x 496, 500-01 (6th Cir. 2006) (holding that prejudgment interest on the entire damages found ran from the filing of the complaint even though the plaintiff's lost profit damages did not start to accrue until later).  As in *Perceptron* and *Seton*, here the actual legal wrong (tortious interference) predated the filing of the Complaint.  Thus, prejudgment interest,

calculated on the full award, runs from the filing of the Complaint even if Defendants were paid by the FAA thereafter.

For the reasons discussed, the Court finds no merit to Defendants' objections to LinTech's proposed Amended Judgment.

### LinTech's Motion for Post-Judgment Discovery and to Prohibit Transfer of Assets

LinTech seeks permission to conduct post-judgment discovery to uncover Defendants' assets in aid of collection on the Judgment.  LinTech also asks the Court to enjoin Defendants from concealing, transferring, selling, encumbering, or disposing of their assets outside of the ordinary course of business.

Federal Rule of Civil Procedure 69 provides, in part:

> **(a) In General.**
>
> **(1) Money Judgment; Applicable Procedure.**  A money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution— and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.
>
> **(2) Obtaining Discovery.**  In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

35

As relevant here, Michigan Compiled Laws § 600.6104 sets forth a court's post-judgment powers to aid in the collection of a money judgment.  These powers include compelling discovery and preventing the transfer of property, money, or things in action, and "any order as within [the court's] discretion seems appropriate in regard to carry out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor."  Mich. Comp. Laws § 600.6104(1), (2), (5).

Section 600.6104 expressly allows a court to "permit the proceedings under [the] chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment."  *Id*.  The statute further provides that "[i]t is not necessary that execution be returned unsatisfied before proceedings under th[e] chapter are commenced."  *Id*.  Nevertheless, the statute does not require the court to permit the proceedings.

Here, where Defendants already posted a bond in the amount of $6,850,186.41 and are likely to appeal the jury's verdict, the Court finds it premature and an inefficient use of the parties'—and likely the Court's—resources to permit post-judgment execution proceedings to begin.  LinTech seems to anticipate that Defendants will not willingly pay the awards against them. However, this Court is presented with no evidence suggesting that this will be the

case, and Defendants' immediate posting of a significant bond suggests otherwise. For that reason, the Court also finds it unnecessary to restrain Defendants' assets.

LinTech nevertheless argues that Defendants have not posted a bond reflecting the total award, as the current supersedeas bond does not cover the costs and interest to be included in an amended judgment. Thus, LinTech maintains it does not have security for the approximate $1.7 million addition to its award. While a full supersedeas bond (i.e., inclusive of costs, interest, and damages for delay) generally is required, courts do have the discretion to modify or even waive the bond requirement. *See Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 353 (E.D. Mich. 1998) (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990); *Fed. Prescription Serv., Inc. v. Am. Pharm. Assn.*, 636 F.2d 755, 758 (D.C. Cir. 1980)); *see also Dubuc v. Green Oak Twp.*, No. 08-13727, 2010 WL 3987616, at *1 (E.D. Mich. Oct. 1, 2010) (collecting cases) ("While in general the supersedeas bond is for an amount that would satisfy the full judgment, inclusive of costs, interest, and damages for delay, it is within the district court's discretion to reduce the amount of the bond, substitute an alternate form of security for the bond, or dispose of the bond requirement entirely."). The Court finds the amount posted sufficient, as it appears Defendants are able to satisfy the full judgment. *See Arban v. W. Pub'g Co.*, 345 F.3d 390, 409 (6th Cir. 2003).

## Conclusion

For the reasons stated, the Court **DENIES** Defendants' motion for judgment as a matter of law or, alternatively, for a new trial or remittitur (ECF No. 348) and **GRANTS** LinTech's motion to amend the judgment (ECF No. 339).  The Court **DENIES WITHOUT PREJUDICE** LinTech's motion for post-judgment discovery and to enjoin Defendants' transfer of assets.  (ECF No. 351.)

The Order staying execution of the judgment remains in place pending any timely appeal.  If a timely notice of appeal is not filed, LinTech may ask the Court to lift the stay.

**SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: February 27, 2026